ITEN BISCUIT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 16429, 20899. Promulgated March 15, 1932.

*Ferdinand Tannebaum, Esq.,* for the petitioner.
*W. Frank Gibbs, Esq.,* for the respondent.

884

888

890

OPINION.

LANSDON: The petitioner contends it is within the provisions of section 327 of the Revenue Act of 1918, and that its profits taxes for the years in controversy should be redetermined under the provisions of section 328 of that act; but should it be wrong in that contention, then it is contended that the respondent has understated invested capital, for each of those years, by excluding therefrom a substantial portion of intangibles admissible under the limitations of section 326 (a) (4) of the act. The claim to special assessment is premised upon (1) respondent's inability satisfactorily to determine the invested capital, because of the manner and form of organization and the impossibility of ascertaining the cost of intangibles developed in the business; (2) an abnormality in capital resulting from the inclusion of tangible property at less than the actual cash value thereof, as of the date of acquisition, and the exclusion of valuable income-producing intangibles developed in the business; and (3) an abnormality in income, resulting from the payment of salaries to executive officers which were abnormally low and inadequate considering the qualifications of such officers and the nature of the services rendered.

We are satisfied from the record before us that there is an abnormality in capital within the meaning of subdivision (d) of section 327 of the Revenue Act of 1918, due to the exclusion of valuable intangibles which were substantial contributing factors in the earning of the income of the years in controversy. The history of sales promotion and development work and the record of gross sales and earnings over the period of corporate existence denote the creation and rapid enhancement in value of an intangible structure. We think the evidence warrants the conclusion that in 1916, when the

petitioner acquired the Iowa and Oklahoma companies, the value of the petitioner's intangibles alone was at least $1,000,000, an amount in excess of its investment in the tangible properties of the business; and there is nothing in the history of the business subsequent to 1916 which indicates any diminution in the value of those intangibles. For the five-year period 1912 to 1916, inclusive, the average net tangibles employed in the petitioner's business amounted to $621,661.17, and the average earnings of the business amounted to $252,244.48. If a return of 10 per cent be ascribed to the net tangibles, the earnings attributable to the intangibles were more than three times the earnings attributable to the tangibles. No part of the value of the intangibles may be included in invested capital under the provisions of section 326 of the act, except to the extent of the actual cash expenditures in building up the intangible structure, and the amount of these expenditures, which represent but a very small portion of the whole intangible value, can not be determined from the books of account. It is unnecessary to discuss the other grounds advanced by the petitioner as the basis of its claim for special assessment. In our opinion, the exclusion from invested capital of the intangibles developed in the petitioner's business creates just such an abnormality as is contemplated by section 327 and makes mandatory the application of the provisions of section 328 for the determination of the petitioner's profits taxes for the years in controversy.

Our decision on the issue of special assessment makes it unnecessary to consider the alternative issue raised by the petitioner at this time. Unless the profits tax under section 328 is greater than the tax when computed under section 301, the matters pertaining to invested capital and the war-profits credit raised in the petition are moot questions and adjudication thereof is unnecessary.

The remaining question for consideration is whether the petitioner is entitled, in computing taxable net income, to deductions for depreciation of can containers, so-called "returnable packages." This is the same question as was raised by the petitioner in Dockets 43667 and 45164, decided this day; and upon the authority of the decision in those proceedings, we hold that the petitioner divested itself of the ownership of returnable cans in which it shipped its products to customers; that such returnable cans were not used in the petitioner's business; and that it is not entitled to deductions representing reasonable allowances for wear, tear and exhaustion of the returnable cans, in computing the taxable net income of each of the years in controversy. The amounts of such allowances are not in controversy. Accordingly, the respondent's claim for an increased deficiency for each of the years in controversy, based upon the grounds

that he erred in allowing deductions for depreciation of returnable cans, and that he failed to include the gains from sales of returnable cans in gross income, is approved.

In view of the stipulation of the parties that the respondent has erroneously allowed a deduction of $3,073.87 for 1919 on account of real estate taxes which were also allowed as a deduction for 1918, the net income for 1919 as determined by the respondent in the deficiency notice should be increased by that amount.

*Decision will be entered after other hearing under Rule 62.*